UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES OF THE
WESTERN STATES INSULATORS AND
ALLIED INDIVIDUAL ACCOUNT PLAN,
et al.,

               Plaintiffs,

      v.

A1 INSULATION MECHANICAL, L.L.C.,

           Defendant.

Case No.  24-cv-03921-JSC

**ORDER GRANTING MOTION FOR
DEFAULT JUDGMENT**

Re: Dkt. No. 23

Plaintiffs, employee benefit plans, bring claims against Defendant, A1 Insulation
Mechanical, LLC, for failure to report and pay contributions for hours employees worked in
violation of the Employee Retirement Income Security Act of 1974 ("ERISA").  (Dkt. No. 1.)
After Defendant failed to appear, the Clerk entered its default and Plaintiffs filed the now pending
motion for default judgment.  (Dkt. Nos. 15, 18, 23.)  After carefully reviewing Plaintiffs' written
submission, including Plaintiffs' supplemental briefing, the Court GRANTS the motion for default
judgment and AWARDS Plaintiffs $299,470.84 in damages, $29,947.08 in liquidated damages,
$15,618.18 in interest, $10,855.78 in audit fees, $13,448.90 in attorneys' fees, and $745.00 in
costs for a total of $370,085.78.

**BACKGROUND**

**A. Complaint Allegations**

Plaintiffs, Western States Insulators and Allied Workers Pension Plan, Western States
Insulators and Allied Workers Individual Account Plan, Western States Insulators and Allied
Workers Health Plan, Board Of Trustees, Western States Insulators and Allied Workers Pension
Plan, Board Of Trustees, Western States Insulators and Allied Workers Individual Account Plan,
Board Of Trustees, Western States Insulators and Allied Workers Health Plan ("Plaintiffs"), are

employee benefit plans and their respective trustees.  (Dkt. No. 1 ¶ 7.)  Defendant, "A1 Insulation Mechanical, LLC," is an employer.  (*Id*. ¶ 12.)  The parties entered into a Collective Bargaining Agreement ("CBA") requiring Defendant to make payment contributions to Plaintiffs' employee benefit plans—funds organized under and pursuant to the provisions of 29 U.S.C. § 186(c)—based on the hours worked by Defendant's employees.  (*Id*. at 5-6.)  Under the CBA, Defendant agrees to be bound by and comply with the terms and provisions of the Agreement and Declaration of Trusts (collectively "Trust Agreements") establishing the benefit plans.  (*Id*.)  The CBA establishes the various Trust Funds, which require Defendant to pay benefit contributions, and enumerates the procedures if Defendant fails to do so.  (*Id*.)

Although Defendant agreed to submit monthly contribution reports and payments, Defendant failed to do so.  (*Id*.)  Under the CBA and Trust Agreements, Defendant agreed that if it failed to promptly pay amounts owed to the Benefit Plans, it would be required to pay interest, liquidated damages, audit fees, and all expenses of collection, including legal fees incurred by the trustees.  (*Id*.)  Between the months of June 2023 and June 2024, Defendant failed to report and pay contributions for hours worked.  (*Id*. at 6.)  Plaintiffs seek damages including delinquent contributions, liquidated damages, interest, audit fees, costs, and attorneys' fees.  (*Id*. at 13.)  Plaintiffs also request a court order requiring Defendants to submit books and records covering the period of January 1, 2021, to June 28, 2024.  (*Id*.)

### B.  Procedural Background

Plaintiffs filed this action to compel Defendant to comply with an audit of its payroll records and to pay all contributions, liquidated damages, and interest including such costs which accrued for any months Defendant failed to report through judgment.  (Dkt. No. 1.)  After Defendant failed to appear, Plaintiffs filed for entry of default and the Clerk entered Defendant's default.  (Dkt. Nos. 16, 17, 18.)  Plaintiffs then filed the now pending motion for default judgment.  (Dkt. No. 23.)  Although Plaintiffs filed a proof of service of the notice of motion for default judgment, Defendant did not respond to the motion for default judgment.  (Dkt. No. 24.)

//

//

United States District Court
Northern District of California

**LEGAL STANDARD**

After entry of default, a court may exercise discretion to grant default judgment on the merits of the case. Fed. R. Civ. P. 55(b)(2). The complaint's factual allegations regarding liability are deemed admitted by the non-moving party and are accepted as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Courts in the Ninth Circuit apply the *Eitel* factors, detailed below, to determine if default judgment is appropriate. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

**DISCUSSION**

**A. Sufficiency of Service of Process**

A court must assess whether the party against whom default judgment is sought was properly served with notice of the action. *Penpower Tech. Ltd. V. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008). Rule 4(h) provides a corporation may be served by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process within any judicial district of the United States. Fed. R. Civ. P. 4(h)(1)(B). Here, service was sufficient because on August 17, 2024, Plaintiffs properly served the Complaint and summons by personal service on Mr. Angel Aguilar, Defendant's agent, within the judicial district of Arizona and later filed a proof of service of summons. (Dkt. No. 14.) This is sufficient to establish proper service of process.

**B. Jurisdiction**

Courts must examine both subject matter and personal jurisdiction when default judgment is sought against a non-appearing party. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

**1. Subject Matter Jurisdiction**

This Court has subject matter jurisdiction because, under federal law, plan fiduciaries may bring civil actions to enforce the terms of the plan. 29 U.S.C. § 1132(a)(3)(B)(ii). Moreover, Plaintiffs seek to enforce the CBA's terms and conditions which, as a suit for "violation of contracts between an employer and a labor organization representing employees," may be brought in any district court having jurisdiction of the parties, without respect to the amount in controversy or the parties' citizenship. 29 U.S.C. § 185(a).

### 2.  Personal Jurisdiction

A court may acquire personal jurisdiction over a defendant in two ways: "by personal service of that defendant or by means of a defendant's minimum contacts with the jurisdiction." *Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1267 (9th Cir. 1992) (cleaned up). Under ERISA, an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."  29 U.S.C. § 1132(e)(2).  Given this nationwide service of process provision, service on a defendant in an ERISA case anywhere in the United States is sufficient to establish personal jurisdiction, and there is no need to engage in the "minimum contacts" analysis.  *Cripps*, 980 F.2d at 1267; *see also Operating Eng'rs Health & Welfare Tr. Fund for N. California v. AM Dev. Inc.*, No. 4:23-CV-04227-KAW, 2024 WL 4627052, at *4 (N.D. Cal. Sept. 13, 2024) (finding personal jurisdiction exists over defendants in an ERISA action in the jurisdiction where the trust funds were administered.)

Here, Defendant was served in the judicial district of Arizona.  (Dkt. No. 14.) Additionally, the trust funds were administered in California.  (Dkt. No. 23-1 at 87.)  Therefore, this Court has personal jurisdiction over Defendant pursuant to ERISA's service of process provision and because the trust fund was administered in California.

### C.  *Eitel* Factors

In exercising discretion to grant default judgment, courts consider:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

782 F.2d at 1471–72.

### 1.  Prejudice to Plaintiff

The first factor considers whether Plaintiffs will suffer prejudice if the Court declines to enter default judgment, that is, whether Plaintiffs will be left without a legal remedy.  *GS Holistic, LLC v. MSA-Bossy Inc.*, No. 22-07638, 2023 WL 3604322 at *3 (N.D. Cal. May 22, 2023).  Here,

United States District Court
Northern District of California

1    because Defendant did not respond to the Complaint, Plaintiffs' only recourse for their claims is

2    default judgment.  Accordingly, the first factor weighs in favor of default judgment.

3    **2.  Merits of Plaintiffs' Substantive Claims/Sufficiency of the Complaint**

4    The second and third factors, "often analyzed together," consider whether the facts as

5    pleaded in the complaint address the merits and sufficiency of Plaintiffs' claims.  *Dr. JKL Ltd. v.*

6    *HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010).  In analyzing these *Eitel* factors,

7    all well-pleaded allegations regarding liability are accepted as true and deemed admitted.  *Fair*

8    *Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  Consequently, "[t]he district court

9    is not required to make detailed findings of fact."  (*Id.* at 906.)

10    As defined under ERISA, Defendant is an employer, and Plaintiffs are multi-employer

11    plans.  29 U.S.C. § 1002(37)(A); (Dkt. No. 1 ¶¶ 7, 13.)  Defendant entered into the CBA and Trust

12    Agreement (collectively the "Agreements") with Plaintiffs.  (Dkt. No. 1 ¶¶ 14-22.)  The

13    Agreements require Defendant to contribute to Plaintiffs' Trust Funds.  (*Id*); *see* 29 U.S.C § 1145

14    (requiring "every employer who is obligated to make contributions to a multiemployer plan" to

15    "make such contributions in accordance with the terms and conditions of such plan or such

16    agreement.").  Plaintiffs allege, and the Court must accept as true, Defendant has failed and

17    refused to pay outstanding amounts due including contributions, liquidated damages, and interest.

18    (Dkt. No. 1 ¶ 19); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("The

19    general rule of law is that upon default the factual allegations of the complaint, except those

20    relating to the amount of damages, will be taken as true.").  Therefore, Plaintiffs have successfully

21    stated an ERISA claim.  *See U.A. Local No. 467 Pension Trust Fund v. Hydra Ventures Inc.*, No.

22    12-3746, 2013 WL 1007311, at *7 (N.D. Cal. March 13, 2013) (finding this *Eitel* factor satisfied

23    because the plaintiffs showed the defendant failed to pay obligated contributions detailed in the

24    bargaining and trust agreements).

25    Thus, these factors weigh in favor of granting default judgment.

26    **3.  Sum of Money**

27    "Default judgment is disfavored when a large amount of money is involved or

28    unreasonable in light of the potential loss caused by the defendant's actions."  *HICA Educ. Loan*

*Corp. v. Warne*, No. 11-04287, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012).  The Court analyzes this factor "in relation to the seriousness of Defendant's conduct."  *PepsiCo, Inc. v. California Sec. Cans*, 238 F.Supp. 2d 1172, 1176 (C.D. Cal. 2002).  Put simply, when the sum "is tailored to the specific misconduct of the defendant, default judgment may be appropriate."  *Board of Trustees. v. Core Concrete Constr.*, Inc., No. 11–02532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012).

Here, Plaintiffs seek a total of $400,032.87 in damages based on Defendant's unpaid contributions, liquidated damages, interest, audit fees, costs, and attorneys' fees as set forth in the CBA.  (Dkt. No. 27-2 at 2.)  However, even in cases when the sum of the money at stake is "large" courts have granted default judgment when the amount demanded is supported by an agreement.  *See Bay Area Roofers Health & Welfare Tr. Fund v. Platinum Roofing, Inc.*, No. C 19-06765 WHA, 2021 WL 4595073, at *3 (N.D. Cal. Oct. 6, 2021) (concluding the sum of the money at stake of $2,811,676.66 was "proportional" to the alleged misconduct and granting default judgment).  The sum demanded is reasonable because it is based on the Agreement terms which make Defendant liable for unpaid and late-paid contributions, liquidated damages, and interest accrued from unpaid and late-paid contributions.  (Dkt. Nos. 23-1 at 62, Article V); *see Operating Engineers Health and Welfare Trust Fund for Northern California, et al. v. Pipe-net, Inc., et al.*, No. 23-06267, 2024 WL 3390528, at *4 (N.D. Cal. June 14, 2024) (concluding default judgment appropriate because the amount claimed was based on the specific misconduct of failing to pay contributions).  Accordingly, this factor weighs in favor of default judgment.

### 4.  Dispute Regarding Material Fact

The fifth factor requires the Court to consider whether a dispute is possible concerning material facts.  *Eitel*, 782 F.2d at 1471-72.  Defendant was properly served with the Complaint and summons in this action but has not requested default be set aside or otherwise appeared in the action.  Therefore, this factor weighs in favor of default judgment because Defendant is or reasonably should be aware of the lawsuit and yet has not "challenge[d] the accuracy of the allegations in the complaint." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010).

**5.  Excusable Neglect**

The sixth factor "favors default judgment where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit."  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).  Here, Defendant was properly served with the lawsuit.  (Dkt. No. 14.)  Further, Plaintiffs later served Defendant via mail with other documents pertaining to the case, and despite these various communications to Defendant, Defendant has failed to respond to the suit in any capacity.  (Dkt. Nos. 17, 20, 21, 24.)  Therefore, the sixth factor weighs in favor of default judgment because it is unlikely Defendant's failure to respond is due to excusable neglect.

**6.  Policy Favoring a Decision on the Merits**

The final *Eitel* factor considers the policy favoring a decision on the merits.  *Eitel*, 782 F.2d at 1472.  Because public policy favors a decision on the merits, default judgment is inherently undesirable.  (*Id.*)  However, a decision on the merits is impossible in this case because Defendant has failed to participate in the proceedings.  *See PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("[A] [d]efendant's failure to answer the [p]laintiffs' complaint makes a decision on the merits impractical, if not impossible.").  Therefore, on balance, this factor is neutral.

**7.  Liability Following *Eitel* Analysis**

The *Eitel* factors weigh in favor of default judgment.  Plaintiffs will be prejudiced if default judgment is not granted.  Plaintiffs plead viable claims, the sum of money in question, although significant, is reasonable based on the circumstances, there is no apparent dispute of material fact regarding liability, Defendant's failure to respond does not appear to be the result of excusable neglect, and policy favoring a decision on the merits does not weigh against default judgment.  Therefore, the Court grants Plaintiffs' motion for default judgment.

**D.  Damages**

On a motion for default judgment, the Court does not accept factual allegations regarding damages as true.  *TeleVideo Sys., Inc.*, 826 F.2d at 917-18 (citing *Geddes*, 559 F.2d at 560).  Instead, plaintiffs are required to prove all damages sought in the complaint (and, generally, no

more than what is sought in the complaint). *See* Fed. R. Civ. P. 54(c). "The district court may determine the amount of damages without an evidentiary hearing where 'the amount claimed is a liquidated sum or capable of mathematical calculation.'" *Lasheen v. Embassy of The Arab Republic of Egypt*, 625 F. App'x 338, 341 (9th Cir. 2015) (cleaned up).

Here, Plaintiffs originally sought to recover a total of $369,803.96 consisting of $299,470.84 in unpaid contributions, $15,336.36 in interest on unpaid contributions, $29,947.08 in liquidated damages, $13,448.90 in attorneys' fees, $10,855.78 in audit fees, and $745.00 in costs. (Dkt. 23-1 at 136; Dkt. No. 23-2 at 8.) However, after submitting supplemental briefing, Plaintiffs now seek to recover $400,032.87 from Defendants. (Dkt. No. 27-2 at 2.) Plaintiffs justify this increase by seeking to enforce a 20 percent liquidated damages provision for a total of $59,894.17 in liquidated damages, and by recalculating interest on unpaid contributions which total $15,618.18. (Dkt. No. 27 at 2-3.)

### 1. Unpaid Contributions and Interest

Section 1132(g)(2)(A) allows recovery for unpaid contributions once claimants prevail on a section 1145 claim. 29 U.S.C. § 1132(g)(2)(A). Plaintiffs seek both unpaid contributions from June 2023 to September 2024 and interest accrued on those unpaid contributions until December 10, 2024, which total $315,089.02. (Dkt. No. 27-1 at 7.) Specifically, Plaintiffs provide evidence they are owed $299,470.84 based on reportable hours worked for each employee at a specific wage rate. (*Id*. at 1-7.) Given Plaintiffs have provided an accounting for all employees who were not paid contributions from August 1, 2023, to September 30, 2024, and the calculations are mathematically correct, the Court awards Plaintiffs $299,470.84 in unpaid contributions. (*Id*.)

Section 1132(g)(2)(B) permits a plan fiduciary to collect interest on all delinquent contributions once they have prevailed on a section 1145 claim. 29 U.S.C. § 1132(g)(2)(B). Here, Plaintiffs seek $15,618.18 in interest. (Dkt. No. 27-1 at 7.) The rate of interest in the Trust Agreement is 7 percent per annum. (Dkt. No. 23-1 at 122.) In response to the Court's order for supplemental briefing, Plaintiffs provide a detailed record of the interest calculations with the unpaid contribution amount and the number of days that the payment is delinquent. (Dkt. No. 27-1 at 1-7.) The Court verified these calculations by first multiplying the installment amount owed

by the per annum interest rate and the number of days the payment was delinquent and dividing this figure by 365. Plaintiffs' calculations appear to be correct. Accordingly, the Court awards Plaintiffs $15,618.18 in interest for the known delinquent contributions.

### 2. Liquidated Damages

Section 1132(g)(2)(C) permits a court to award "an amount equal to the greater of" "interest on the unpaid contributions" or "liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under [f]ederal or [s]tate law)." 29 U.S.C. § 1132(g)(2)(C). Section 1132 liquidated damages are mandatory when "(1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of a suit, and (3) the plan provides for liquidated damages." *Idaho Plumbers and Pipefitters Health and Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989). Federal common law principles apply to determine the enforceability of a liquidated damages provision. (*Id.* at 216.) Applying federal common law, "[f]irst, the harm caused by a breach must be very difficult or impossible to estimate." (*Id.* at 217.) "Second, the amount fixed must be a reasonable forecast of just compensation for the harm caused." (*Id.*)

Plaintiffs seek liquidated damages in the amount of $59,894.17. (Dkt. No. 27-1 at 7.) Having obtained a judgment in their favor for unpaid contributions, Plaintiffs are entitled to liquidated damages as set forth in the Trust Agreements provided they comply with federal common law. (Dkt. No. 23-1 at 268-69 at 122, ("Delinquent Contributions").)

Here, although the Trust Agreements provide liquidated damages shall increase from 10 percent to 20 percent if a lawsuit to collect delinquent contributions has been filed, Plaintiffs fail to explain why this increase is reflective of a reasonable forecast of potential harm. (Dkt. No. 23-1 at 268-69 at 122, ("Delinquent Contributions"); Dkt. No. 23-1 at ¶ 29.) Twenty percent in liquidated damages for unpaid contributions after a complaint was filed is not a reasonable forecast of just compensation for potential harm. *See Idaho Plumbers*, 875 F.2d at 218 (finding the amended provision for liquidated damages of 20% was not a good faith attempt to estimate potential damages from a breach because the trust funds provided no explanation for the increase

from 10% to 20% liquidated damages).  Furthermore, a lawsuit to collect delinquent payments does not justify the increase in liquidated damages because Plaintiffs are already entitled to "reasonable attorneys' fees and costs of the action" under ERISA.  29 U.S.C. § 1132(g)(2)(D); *see Board of Trustees v. Udovch*, 771 F. Supp. 1044, 1051 (N.D. Cal. 1991) (finding an increase from 10% to 20% for liquidated damages is not justified by the costs incurred from counsel's collection efforts because a separate avenue for collecting attorneys' fees is provided, nor are those costs so difficult to measure that they are appropriate subjects of liquidated damages provisions, and the increased liquidated damages figure intends to punish rather than providing fair compensation). Ten percent in liquidated damages sufficiently cover the "increased cost occasioned by a delinquency" and thus satisfies the first prong of enforceability of a liquidated damages provision. (Dkt. No 23-1 at 121 "Collections Procedures" "Periodic Review".)  Further, 10 percent in liquidated damages is a reasonable forecast of just compensation for the harm caused.  *See United Order of Am. Bricklayers & Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc.*, 519 F.2d 331 (9th Cir. 1975) (enforcing the 10 percent liquidated damages provision of the collective bargaining agreement); *see also Bd. of Trustees of N. California Plasterers Health & Welfare Tr. Fund v. Hinds Bros. Co.*, No. 3:15-CV-02387-JD, 2019 WL 4168908, at *2 (N.D. Cal. Sept. 3, 2019) (same).  Accordingly, the Court awards 10 percent liquidated damages, for a total of $29,947.08.[1]

### 3.  Attorneys' Fees, Audit Fees, and Costs

Plaintiffs seek $13,448.90 in attorneys' fees, $10,855.78 in audit fees, and $745.00 in costs.  (Dkt. No. 23-2 at 8; Dkt. No. 23-1 at 136.)

### a.  Attorneys' Fees

A court shall award "reasonable attorney's fees and costs of the action, to be paid by the defendant."  29 U.S.C. § 1132(g)(2).  In addition, the Trust Agreements require Defendant to pay any attorneys' fees Plaintiffs incur due to Defendant's default.  (Dkt. No. 23-1, at 70, "Section 5.3".)

---

[1] Further, in their initial declaration in support of the default judgment, Plaintiffs initially sought only 10 percent in liquidated damages. (Dkt. No. 23-1 at 136.)

United States District Court
Northern District of California

The "lodestar method" is the appropriate method for evaluating Plaintiffs' request for attorneys' fees, which is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

### i. Hours Expended

The Court considers the reasonableness of the hours expended by examining the billing record to decide whether the time spent was "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434(1983). To assess whether the number of hours billed is reasonable, plaintiffs may provide detailed records justifying the hours expended. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

Plaintiffs provide detailed billing records supporting their claim of 34.2 hours of work. (Dkt. No. 23-2 at 6-7.) These billing records identify the attorneys and paralegal who worked on this matter – Katherine McDonough, Esq., Jessica M. Alvarez, Esq., Harjot Kaur, Esq., and senior paralegal, Rochelle Carter – and are sufficiently detailed to reflect compensable work performed on the case. (*Id*. at 3.) Given the records state the timekeeper and contain a detailed description of the work, and there is no evidence to suggest that the hours expended were "excessive, redundant, or otherwise necessary," Plaintiffs show the hours expended were reasonable. *See Hensley*, 461 U.S. at 424.

### ii. Hourly Rates

In determining whether a prevailing party's requested fees are reasonable, the Court considers the "experience, skill, and reputation of the attorneys requesting fees," as well as the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).

Jessica Alvarez, an attorney with Kraw Law Group, APC, summarizes the qualifications and hourly rates of the attorneys and paralegal who worked on the case. (Dkt. No. 23-2 ¶ 8.) Ms. McDonough, who has over 23 years of experience, bills $650 per hour. (*Id*. at 6.) Ms.

1    Alvarez, who has 8 years of litigation experience, bills $500 per hour.  (*Id*.)  Ms. Kaur, who has

2    1 year of experience bills $400 per hour.  (*Id*. at 6.)  Paralegal Ms. Carter bills $225 per hour.

3    (*Id*. at 6-7.)   The above rates for the lawyers and paralegals are reasonable hourly rates in the

4    Northern District of California.  *See In re LinkedIn ERISA Litig.*, No. 5:20-CV-05704-EJD, 2023

5    WL 8631678, at *10 (N.D. Cal. Dec. 13, 2023) (finding that rates ranging from $375 to $550 per

6    hour for associate attorneys and rates ranging from $750 an hour to $1,100 for partners were

7    reasonable for ERISA litigators); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-

8    03698-NC, 2018 WL 2183253, at *7 (N.D. Cal. May 11, 2018) (approving rates of $250 per

9    hour for paralegals in an ERISA litigation).  Plaintiffs have demonstrated the request for

10   attorneys' fees is reasonable. Therefore, the Court awards Plaintiffs $13,448.90 in attorneys' fees.

11        **b.  Audit Fees**

12        ERISA allows "other legal or equitable relief as the court deems appropriate." 29

13   U.S.C. § 1132(g)(2).  Audit fees fall under this provision.  *See Operating Eng'rs Pension Trust v.*

14   *A-C Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988).  Further, the Trust Agreements provide Defendant

15   shall be liable for an hourly charge for time spent on the audit.  (Dkt. No 23-1 at 124,

16   "Underpayments Identified Through Payroll Audits.")  Here, Plaintiffs incurred $10,855.78 in

17   audit fees for examination of books and records to ensure compliance with the CBA and Trust

18   Agreements.  (Dkt. No. 23-1 at 136.)  The Court finds $10,855.78 sought in audit fees is

19   reasonable.  *See Bd. of Trustees of Teamsters Multi-Benefit Tr. v. Durham Sch. Servs.*, L.P., No.

20   CV 18-1907-DOC (KSX), 2018 WL 5919467, at *6 (C.D. Cal. May 25, 2018) (finding $9,218.00

21   in audit fees to be reasonable).  Therefore, the Court awards Plaintiffs $10,855.78 in audit fees.

22        **c.  Costs**

23        Finally, Federal Rule of Civil Procedure 54(d)(1) provides a prevailing party is entitled

24   to costs.  Fed. R. Civ. P. 54(d)(1). The rule "creates a presumption in favor of awarding costs to

25   the prevailing party." *Ass'n of Mexican-American Educators v. California*, 231 F.3d 572, 598

26   (9th Cir. 2000) (internal citation omitted).  Due to this strong presumption, "a district court

27   [] generally must award costs unless the prevailing party is guilty of some fault, misconduct, or

28   default worthy of punishment."  (*Id*. (cleaned up)).  Courts have awarded costs in ERISA cases

United States District Court
Northern District of California

12

which include filing fees, service of process fees, subpoena fees, and photocopy fees. *See Harlow v. Metro. Life Ins. Co.*, 379 F. Supp. 3d 1046, 1061 (C.D. Cal. 2019). Here, Plaintiffs seek $745 in costs comprised of filing fees and service of process fees. (Dkt. No. 23-2 at 11.) The Courts finds these costs to be reasonable. *See Harlow, 379 F. Supp. 3d at 1060* (finding that "costs relating to the filing fee, service of process[,] certain photocopies, and subpoena fees" are recoverable as part of fee award in connection with default judgment in ERISA case). Accordingly, the Court awards Plaintiffs $745.00 in costs.

## CONCLUSION

The Court GRANTS the motion for default judgment and AWARDS Plaintiffs $299,470.84 in damages, $29,947.08 in liquidated damages, $15,618.18 in interest, $10,855.78 in audit fees, $13,448.90 in attorneys' fees, and $745.00 in costs for a total recovery of $370,085.78.

**IT IS SO ORDERED.**

Dated: February 11, 2025

JACQUELINE SCOTT CORLEY
United States District Judge